UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

MANUEL JOSE MAES, JR.,

    Petitioner,

v.

LEA ANN CHRONES, et al.,

    Respondents.

CASE NO. C07-1292BHS

ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS

This matter comes before the Court on the First Amended Petition for Writ of Habeas Corpus (Dkt. 23). The Court has considered the petition, the answer, the traverse, and the remainder of the file and hereby denies the petition for the reasons stated herein.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Petitioner is a state prisoner currently incarcerated at Kern Valley State Prison in Delano, California. He filed a petition for writ of habeas corpus to challenge his 2004 Sacramento County conviction. Dkt. 1.

### A. Petitioner's Trial

On April 15, 2004, Petitioner was convicted by a jury of the lesser-included offense of second degree murder (Cal. Penal Code § 187) with an enhancement for using a baseball bat as a deadly weapon (Cal. Penal Code § 12022(b)(1)). Lodged Document 9, Clerk's Transcript ("CT") at 215-16. On June 11, 2004, based on the conviction and

the enhancement, the trial court sentenced Petitioner to an indeterminate term of 16 years to life imprisonment. *Id.* at 268.

**B.     Petitioner's Appeal**

Petitioner appealed his conviction to the California Court of Appeals. Lodged Document 1. He raised multiple issues on appeal, including two that are relevant to this petition:

> 1.     The trial court erred prejudicially in denying appellant's request to have the jury instructed with [California Pattern Jury Instruction ("CALJIC") No. 5.44]; and
> 2.     The court erroneously instructed the jury that appellant bore the burden of proving that the victim had a violent character.

Lodged Document 1 at 12, 14.

On May 11, 2006, the court issued its opinion and summarized the facts of this case as follows:

> Defendant lived with his extended family, including his mother, siblings, girlfriend, and child. On March 29, 2002, the family spent the day moving from one house to another around the block. The victim, a neighbor named John Sullivan, helped defendant move a washing machine.
> The new house featured a converted garage, which was used as the bedroom for defendant's brother, Gabe. Late in the afternoon, a group of friends gathered in Gabe's new room to play video games, listen to music, drink, and smoke marijuana. Defendant and his girlfriend, Angela, argued loudly in the yard because Angela wanted to join the group and defendant thought it was inappropriate.
> While defendant and Angela were arguing, the victim came over and tried to apologize to defendant for something he had done. (What that something was was never established.) Defendant angrily told him that he was interrupting, so the victim went into Gabe's room to get a beer. The victim then went back outside and again tried to approach defendant, telling him that he was sorry. Defendant did not want to hear the victim's apology and told the victim to leave. As the victim kept trying to apologize, defendant became increasingly angry, and he told the victim to "get the fuck out of here." Defendant told the victim he had five seconds to leave or he would "kick his ass." The victim instead went into Gabe's room in the converted garage.
> Defendant followed him and again threatened to kick his ass. The victim repeated that he was going to stay put, that he wanted to talk to defendant, and that defendant should calm down. Defendant picked up a baseball bat and proceeded to beat the victim on his head and body.
> Defendant's mother, Cynthia, heard screaming. She entered the garage and saw the defendant, in a rage, beating the victim until "he couldn't move anymore." The victim lay on the floor, covered in blood and moaning. Cynthia asked her son what he had done, and he replied, "I beat him up" and said the victim needed to mind his own business. When

Cynthia told defendant to call an ambulance because the victim was going to die, defendant replied that the victim was fine.

The victim's girlfriend arrived on the scene and became hysterical. She told defendant that they needed to get the victim to the hospital, but defendant refused to allow that. Instead, he threatened to kill the victim's girlfriend. Defendant remained very angry, and when other friends suggested calling an ambulance or the police, he replied, "No, fuck that, you're not calling the police. Clean this shit up. If anybody calls the police I'll kill them before the police get here." He said that if he heard police arrive, he would "finish him off," and that "if I'm going to go for attempted murder, I might as well go for murder."

Defendant and his mother began to clean the blood in the room as the victim lay there, moaning. Sometime later, defendant directed others in the group to move the victim's body so that it looked like he was beaten up elsewhere and trying to crawl home. Some of defendant's friends placed the victim on a door, carried him outside, and left him there.

Someone eventually called the police, who arrived on the scene and found the victim in the gutter, bloodied, unconscious, and breathing erratically. The victim subsequently died from blunt force head and thoracic injuries.

Officers went to defendant's home and arrested him after defendant emerged from a bathroom, wearing different clothes. Police officers found clothing soaking in the bathtub. When officers asked defendant for consent to search his house, defendant asked if others had already consented and he asked to see the forms. Defendant appeared coherent and understood the officers' questions. Officers noticed a slight smell of alcohol, but defendant did not appear inebriated.

After initially denying any involvement in the crime, defendant admitted to police officers that he might have beaten the victim while in a rage. He said he had consumed a lot of alcohol and may have blacked out. He did not know how many times he hit the victim, nor did he remember cleaning up the room.

Toxicologists analyzed a blood sample from defendant and found a small amount of methamphetamine but no alcohol.

Witnesses at trial described other violent behavior by defendant, including assaults on Angela and the boyfriend of defendant's mother.

As discussed in further detail later in this opinion, witnesses described the attack on the victim, testifying that the defendant went into a rage at the victim's persistent attempts to apologize to defendant.

In closing argument, defense counsel suggested that events occurred in the heat of passion, not as the result of premeditation or deliberation. He also asserted claims of self-defense, imperfect self-defense, and unconsciousness.

The jury acquitted defendant of first degree murder but convicted him of second degree murder and found that defendant used a deadly weapon in the commission of the offense. The court sentenced defendant to an aggregate prison term of 16 years to life.

Lodged Document 4 at 2-5.

The court explained that California's Home Protection Bill of Rights (Cal. Penal Code § 198.5) provides as follows:

ORDER - 3

> Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe than an unlawful and forcible entry occurred. As used in this section, great bodily injury means a significant or substantial physical injury.

*Id*. at 22. In order for the rebuttable presumption of § 198.5 to apply, there must be "an unlawful or forcible entry into a residence." *People v. Brown*, 6 Cal. App. 4th 1489, 1494-1495 (1992). The court found that this element was "absent in this case" and concluded that the trial court did not err by refusing to give this instruction to the jury. Lodged Document 4 at 23.

With regard to Petitioner's other relevant issue of appeal, the court ultimately concluded that "[t]here was no error." *Id*. at 28. The court reasoned that:

> [the] instructions, considered as a whole, clearly conveyed to the jury that the prosecution bore the burden of establishing beyond a reasonable doubt that the homicide was not justifiable or excusable.

*Id*. The court also reasoned that the trial court's comments as to the victim's character could not have contributed to the jury's verdict that Petitioner was guilty of second degree murder because, based on the evidence in the record, "a self-defense theory was not credible." *Id*. at 29.

**C.     Petitioner's Petition to the Supreme Court of California**

On June 22, 2006, Petitioner filed a Petition for Review in the California Supreme Court. Lodged Document 7. The petition raised seven issues, including the following three issues:

> 1. What is the definition of "forcible entry" within the meaning of the home protection bill of rights? If a trespasser refuses a homeowner's lawful command to leave the premises, but instead engages the homeowner in a belligerent confrontation outside before running into the residence through an open door, has the trespasser made forcible entry within the meaning of the home protection bill of rights?
> 2. When there is substantial evidence of an unlawful forcible entry within the meaning of the home protection bill of rights, is it error to give CALJIC Nos. 5.42 and 5.43, which are inconsistent with the right to protect one's home against a forcible intruder?

ORDER - 4

3. Was appellant denied his federal constitutional right to due
       process of law by an instruction which assigned to him the burden of
       proving that the victim had a violent character?

*Id*. at 9, 14, 25. On August 30, 2006, the court summarily denied Petitioner's request for review. Lodged Document 8.

**D.     Petitioner's Federal Habeas Corpus Petition**

On June 22, 2007, Petitioner filed a federal habeas petition stating seven grounds for relief. Dkt. 1. On July 30, 2007, the Court appointed counsel for Petitioner. Dkt. 8. On February 22, 2008, Petitioner filed an amended petition. Dkt. 23. In that petition, he amended claim one to include original claim one (self-defense) and original claim two (instructional error), maintained original claim six (instructional error) as amended claim two, and abandoned original claims three, four, five, and seven. *Id*. at 4, 10, 13. On April 8, 2008, Respondent answered. Dkt. 24. On June 5, 2008, Petitioner filed a traverse. Dkt. 27.

The Court has carefully reviewed the entire record in this case.

## II. CLAIMS

Petitioner raises two claims in his amended federal habeas petition, which are as follows:

       1. Petitioner's right under the Sixth Amendment and Fourteenth
       Amendment to a fair opportunity to defend against the state's charges and
       have the jury consider a complete defense was denied by the trial court's
       refusal to instruct the jury on the right of a person to use deadly force to
       protect themselves after a forcible entry into their home.

       2. Petitioner's right to due process of law was violated by the trial
       court's instruction that he had the burden of proving the victim's violent
       character.

Dkt. 23 at 4, 10.

## III. EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted, or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to

ORDER - 5

protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also, Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862 (9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964). Specifically, a petitioner must apprise the state courts that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000). A petitioner must include reference to a specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *Netherland*, 518 U.S. at 162-163.

In this case, Respondent submits that Petitioner's first claim and a portion of Petitioner's second claim are exhausted. The Court agrees. On the other hand, Respondent submits that the second portion of Petitioner's second claim is not exhausted. Dkt. 24 at 2. The Court will not address this issue because, for the reasons stated *infra*, the Court denies Petitioner's second claim on the merits. *See* 28 U.S.C. § 2254(b)(2) (An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.).

## IV. STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

Petitioner claims that the trial court violated his Constitutional rights by failing to give an appropriate jury instruction and by giving an inappropriate instruction.

**A.  Standard for Challenges to Jury Instructions**

A challenge to jury instructions does not generally state a federal constitutional claim. *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in

the interpretation or application of state law. *Middleton*, 768 F.2d at 1085; *see also Lincoln v. Sunn*, 807 F.2d 805, 814 (9th Cir. 1987); *Givens v. Housewright*, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." *Hines v. Enomoto*, 658 F.2d 667, 673 (9th Cir. 1981) (citing *Quigg v. Crist*, 616 F.2d 1107 (9th Cir. 1980), *cert. denied*, 449 U.S. 922 (1980)); *see also Lisenba v. California*, 314 U.S. 219, 236 (1941).

A "defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006). However, Petitioner's burden under federal habeas review is "especially heavy" when the trial court fails to give an instruction because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

**B.     CALJIC No. 5.44**

Petitioner argues that the trial court violated his right to due process of law by refusing to instruct the jury as to the right to protect oneself at home. Dkt. 23 at 4-10; Dkt. 27 at 2-5. Respondent counters that this claim "must be denied because the state court's rejection of it was neither contrary to, nor an unreasonable application of, Supreme Court precedent." Dkt. 24 at 7.

In reviewing this claim, the California Court of Appeals concluded as follows:

> Four elements must be present in order for the rebuttable presumption of section 198.5 to apply. "There must be an unlawful and forcible entry into a residence; the entry must be by someone who is not a member of the family or the household; the residential occupant must have used 'deadly' force . . . against the victim within the residence; and finally, the residential occupant must have had knowledge of the unlawful and forcible entry." ( *People v. Brown* (1992) 6 Cal. App. 4th 1489, 1494-1495.) The first element, an unlawful and forcible entry into a residence, is absent in this case.

> The victim did not force his way into defendant's home. When defendant initially told the victim not to interrupt his conversation with Angela, the victim turned and walked into Gabe's room (the converted garage), and got a beer. He then went back outside and tried to talk to defendant again. When defendant ordered him to leave the property, the victim walked back to the garage. There was nothing forcible about this entry.
>
> As Justice Blease noted in his concurring and dissenting opinion in *People v. Brown, supra*, 6 Cal. App. 4th at page 1550, "[t]he ordinary meaning of 'forcible entry' is that given in Code of Civil Procedure section 1159: 'Every person is guilty of a forcible entry who . . . [¶] 1. By breaking open doors, windows, or other parts of a house, or by any kind of violence or circumstance of terror enters upon or into any real property . . . .' Applying this definition, section 198.5 applies only [when] entry ha[s] been gained 'by breaking open doors, windows, or other parts' or 'by any kind of violence or circumstance of terror . . . .'" (Italics omitted.)
>
> Here, there was no break in, no violence, and no circumstance of terror. While the victim might have overstayed his welcome and become a trespasser, he did not forcibly and unlawfully enter the converted garage; he simply walked in. The court instructed the jury on self-defense and the justifiable ouster of a trespasser. However, because there was no forcible entry, defendant was not entitled to the presumption afforded by the Home Protection Bill of Rights. The trial court properly refused to instruct the jury pursuant to CALJIC No. 5.44.

Lodged Document 4 at 23-24.

In considering this habeas petition, the Court is bound by the California Court of Appeals' interpretation of the Home Protection Bill of Rights, Cal. Penal Code § 198.5. *See Middleton*, *supra*. Therefore, the state court violated Petitioner's constitutional right to present all defenses to which he was entitled if there was sufficient evidence in the record for a reasonable jury to find that the victim's entry had been gained either "by breaking open doors, windows, or other parts" or "by any kind of violence or circumstance of terror." *See Mathews, supra*.

Petitioner argues that there was sufficient evidence in the record to show that the victim's entry into Petitioner's home was gained by violence or a circumstance of terror. Petitioner's argument is misplaced, however, because he focuses on the arguments and encounters with the victim that occurred while they were on the front lawn of the residence and while they were inside the house. *See, e.g.*, Dkts. 23 at 5-10 and 27 at 2-5. For example, Petitioner cites the testimony of Nathaniel Edwards, a neighbor who was at Petitioner's home on the day of the crime.    Lodged Document 10, Reporter's Transcript

ORDER - 9

1  ("RT") at 572.  Mr. Edwards claimed that, during the argument in the front lawn, the
2  victim "kept trying to force himself on [Petitioner] trying to talk to [Petitioner]."  *Id*. at
3  239.  While this indicates violence between the victim and Petitioner, this does not
4  indicate that the victim gained entry to Petitioner's house under circumstances of violence
5  or terror.  As the California Court of Appeals found, "[w]hile the victim might have
6  overstayed his welcome and become a trespasser, he did not forcibly and unlawfully enter
7  the converted garage; he simply walked in."  *See supra*.  The Court has found no evidence
8  in the record that conflicts with this conclusion.

Although Petitioner asserts that the victim "pushed his way into the house," Dkt. 23 at 6, Petitioner is misstating the evidence in the record, *see* RT at 67.  The prosecution's first witness was Paul Catlett, another neighbor who was at Petitioner's residence on the day of the crime.  RT at 52-54.  Mr. Catlett testified as follows:

> I can hear them, you know, some arguing outside, you know.  I heard that last part, you know, when he was, like, no.  He's like, "You better leave," you know?  So, "I'm going to kick your ass."
> And that's when, you know, [Petitioner] says – [Petitioner] just got fired up mad and, you know, that's when [the victim] came into the room, you know what I'm saying?  And [Petitioner], you know what I'm saying, was behind him.

RT at 67.  This evidence does not show that the victim pushed his way into the house.  Moreover, the trial court, who was in the best position to consider the evidence, concluded that "there [was] little evidence to warrant [CALJIC] 5.44."  RT at 572.  Therefore, Plaintiff has failed to show that there was sufficient evidence for a reasonable juror to find in his favor on this issue.

Even if what "little evidence" there was to warrant CALJIC 5.44 could be considered sufficient evidence, Petitioner has failed to show that the trial court violated his constitutional right to due process.  The trial court instructed the jury as to Petitioner's right to self-defense (RT at 592-594; *see also* CT at 181-182); Petitioner's right to eject a trespasser (RT at 594-595; *see also* CT at 182-83); Petitioner's right to defend his home, dwelling, or anyone within that home or dwelling (RT at 595; *see also* CT at 183); and

the limitations for self-defense or use of force (RT at 595-600; *see also* CT at 184-85). In light of the instructions that were given to the jury, Petitioner has failed to show that any error attributable to the trial court's failure to give CALJIC 5.44 infected the trial in a way that denied Petitioner's right to due process of law.

Petitioner has failed to meet his burden under either avenue of federal habeas relief. He has failed to show that the state court's decision rejecting his claim that the trial court violated his right to due process by failing to give CALJIC 5.44 was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. He has also failed to show that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Therefore, the Court denies Petitioner's claim for habeas relief on this issue.

**C.     Burden of Proof as to Victim's Character**

The Supreme Court has explicitly stated that

> the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship*, 397 U.S. 358, 364 (1970). In this case, Petitioner argues that the trial court violated his right to due process of law by instructing the jury that it was Petitioner's burden to prove the violent character of the victim beyond a reasonable doubt. Dkt. 27 at 8-9.

An erroneous jury instruction does not warrant federal habeas relief unless it so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). It is not enough to show that the instruction was "undesirable, erroneous, or even universally condemned," but rather, it must have actually rendered the trial fundamentally unfair. *Id*. The challenged instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. If the instructions, when considered in this manner, are found to be ambiguous, then a due process violation results only if there is a

reasonable likelihood that the jury misapplied the challenged instruction in such a way that it violated the petitioner's constitutional rights. *Id.* (citing *Boyde v. California*, 494 U.S. 370, 380 (1990)); *see also Middleton*, 541 U.S. at 436. Moreover, if the petitioner is a state prisoner challenging his conviction under 28 U.S.C. § 2254, then he must additionally show that the unconstitutional instruction had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The California Court of Appeals summarized the facts regarding this claim and concluded as follows:

> In his argument to the jury, the prosecutor noted that defendant tried to portray the victim as a violent person who had abused his girlfriend, but he pointed out that defendant had not called the girlfriend as a witness to testify to such abuse. [Lodged Document 10 at 700.]
> Defense counsel objected, stating that "[i]t's the prosecutor's proof. We've been through this a hundred times." [*Id.* at 700-01.]
> The court responded, "The jury understands the prosecution has the burden of proof. However, when the issues of the character for either the victim or the defendant are in issue, the side proposing evidence for or against a violence has the burden of showing that to the jury." Defendant did not object to this explanation. [*Id.*]
> Later, the court made the following comments before giving the jury the concluding instructions:
> "You understand that each side has impugned the other by virtue of the violence of either the defendant or violence of the alleged victim . . . . That's entirely appropriate in this case.
> "Normally, character of the other side for violence is not an issue, but if it's raised by the defense, which is certainly the prerogative and perhaps even appropriate for the defense, then the prosecution can do likewise.
> "And that's what happened in this case. Each side has presented evidence of the violence, the character for violence of either the defendant . . . or . . . the victim. And that's entirely appropriate in this case. The Evidence Code allows it.
> "And you just need to understand that I, the Judge, did permit each side to engage in a mud-slinging contest. It's because the evidence specifically allows this kind of evidence given certain circumstances and that's what's happened in this case.
> "Please understand that when one side tries to prove up the character for violence of the other side, they bear burden of doing that; not the other side.
> "And the weight of this evidence, when you consider it, it's for you the jury to decide. You'll decide how strong it

is, whether it's weak, or give it any other weight to which you find it to be entitled.
"So I wanted to give you a little heads up on that issue about the character of either the victim or the defendant for violence.
"All of that evidence was appropriate and properly considered in this case." [*Id.* at 718-719]

Defendant did not object to these comments. If defendant believed that these instructions blurred the lines between a party's burden of producing evidence and burden of proof, he could have requested clarifying or amplifying instructions. Defendant's failure to do so precludes review on appeal. (*People v. Guiuan*, [18 Cal.4th 558, 570 (1998)].)

Even if we construe defendant's claim as an attack on a legally erroneous instruction, defendant's claim fares no better. We agree with defendant that evidence relating to the victim's allegedly violent character was directly relevant to the question of self-defense. (Evid.Code, § 1103; *People v. Shoemaker* (1982) 135 Cal. App. 3d 442, 446-447.) We disagree, however, with his assertion that the jury would have misunderstood the court's instructions as requiring defendant to prove that he acted in self-defense.

"When the issue of self-defense is properly presented in a homicide case, the prosecution must prove the absence of the justification beyond a reasonable doubt." (*People v. Pineiro* (1982) 129 Cal. App. 3d 915, 920.) In other words, it is not defendant who must establish that he acted in self-defense, but the prosecution who must establish that he did not. Defendant does not have to prove anything; he need only raise a reasonable doubt as to the underlying facts. (*People v. Mower* (2002) 28 Cal.4th 457, 479; *People v. Tewksbury* (1976) 15 Cal.3d 953, 963; *People v. Gonzales* (1999) 74 Cal. App. 4th 382, 390.)

The jury was explicitly instructed on this point pursuant to CALJIC No. 5.15: "Upon a trial of a charge of murder, a killing is lawful if it was justifiable or excusable. *The burden is on the prosecution to prove beyond a reasonable doubt that the homicide was unlawful, that is, not justifiable or excusable. If you have a reasonable doubt that the homicide was unlawful, you must find the defendant not guilty.*" (Italics added.) Additionally, the court instructed the jury pursuant to CALJIC No. 2.90 about the presumption of innocence and the prosecution's burden to prove defendant guilty beyond a reasonable doubt.

These instructions, considered as a whole, clearly conveyed to the jury that the prosecution bore the burden of establishing beyond a reasonable doubt that the homicide was not justifiable or excusable. The jury could not have interpreted the challenged remarks here as instructing otherwise. There was no error.

Moreover, even if the jury found defense witnesses credible and concluded that the victim and defendant in fact argued, no evidence was presented to support a claim of self-defense. As CALJIC No. 5.12 informed the jury that "[t]o justify taking the life of another in self-defense, the circumstances must be such as would excite the fears of a reasonable person placed in a similar position and the party killing must act under the influence of those fears alone. [¶] The danger must be apparent, present, immediate and instantly dealt with, or must so appear at the time to the slayer as a reasonable person, and the killing must be done under a well-founded belief that it is necessary to save one's self from death or great bodily harm."

ORDER - 13

> There was a complete dearth of evidence that the victim posed a danger of death or great bodily harm to defendant, or had done anything that might warrant a fatal beating with a baseball bat. At most, the evidence demonstrated that the victim had (1) been violent in the past and (2) had been engaged in a verbal argument with defendant in the yard before he was beaten to death inside the house. Under these circumstances, a self-defense theory was not credible. There is no reasonable probability, or even possibility, that the challenged comments contributed to the jury's verdict. (*See People v. Pineiro, supra*, 129 Cal. App. 3d at p. 922.)

Lodged Document 4 at 25-29.

In this case, Petitioner fails to meet his burden on federal habeas review. Petitioner argues as follows:

> Not only was this jury was [sic] instructed that [Petitioner] bore the burden of proving [the victim's] propensity for violence, but they were not told of any other kind of burden of proof beyond a reasonable doubt. Thus, the jury effectively believed [Petitioner] had to prove [the victim's] propensity for violence beyond a reasonable doubt. This was a critical error as the issues in this case centered on [Petitioner's] actual fear, even if it was unreasonable, in [the victim's] potential to harm him.

Dkt. 27 at 8. Respondent counters that this instruction made no reference to the issue of self-defense and that the trial court prefaced the instruction by noting that the prosecution has the burden of proof. Dkt. 24 at 12.

Petitioner argues that the state court's decision is contrary to clearly established federal law. Petitioner cites *Victor v. Nebraska*, 511 U.S. 1 (1994), for the proposition that all the jury's findings should be vitiated if the instructional error consisted of a misdescription of the burden of proof. Dkt. 27 at 9. The *Victor* case, however, is distinguishable from this case on the basis of the alleged erroneous instruction. In *Victor*, the Supreme Court addressed the question of whether a jury instruction as to the ultimate burden of proof violated the petitioner's right to due process. *Id.* at 5-7. In this case, Petitioner is challenging the trial court's instruction on who bore the burden of proof as to the violent character of the victim. The state court held that Petitioner was incorrect with "his assertion that the jury would have misunderstood the court's instructions as requiring [Petitioner] to prove that he acted in self-defense." Lodged Document 4 at 27. Petitioner has failed to cite, and the Court is unaware of, any Supreme Court holding that is opposite

to the state court or that was decided differently on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13.

With regard to whether the state court's decision was an unreasonable application of federal law, Petitioner's arguments are unpersuasive. The Supreme Court has stated that

> the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

*Victor*, 511 at 5 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)) (internal citation omitted). In this case, the state court concluded that the trial court's instructions "clearly conveyed to the jury that the prosecution bore the burden of establishing beyond a reasonable doubt that the homicide was not justifiable or excusable." Lodged Document 4 at 28. Petitioner has failed to show that this was an unreasonable application of federal law regarding the concept of reasonable doubt. The trial court read and gave copies of numerous instructions to the jury regarding the ultimate burden of proof (RT 588-89; CT 177), the burden of proof as to first degree murder or lesser included offenses (RT 608-610; CT 193-195), and the burden of proof on the issue of self-defense (RT 593; CT 181). It is unreasonable to assume, as Petitioner suggests, that the jury was confused as to the ultimate burden based on the trial court's instruction as to character evidence. Moreover, if there was ambiguity as to some evidence regarding Petitioner claim of self-defense, Petitioner has failed to show that this ambiguity rendered his trial fundamentally unfair. *Estelle*, 502 U.S. at 72. In fact, the state court found that "no evidence was presented to support a claim of self-defense." Lodged Document 4 at 28.

On this claim, Petitioner has failed to meet his burden under either avenue of federal habeas relief. He has failed to show that the state court's decision rejecting his claim that the trial court violated his right to due process by giving an ambiguous instruction on the burden of proof was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. He has also failed

to show that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Therefore, the Court denies Petitioner's claim for habeas relief on this issue.

## VI. ORDER

Therefore, it is hereby

**ORDERED** that the First Amended Petition for Writ of Habeas Corpus (Dkt. 23) is **DENIED**. A Certificate of Appealability is **DENIED**.

DATED this 11th day of March, 2009.

BENJAMIN H. SETTLE
United States District Judge